WILLIAM TAYLOR *et al.*, plaintiffs in error, v. HANKS TAY-
LOR *et al.*, defendants in error.

*Error to Wayne.*

The presumption of law is, when a father purchases land in the name of his children, unaccompanied by any extraordinary or explanatory circumstances, that it was intended as an advance or gift to them. This presumption, however, may be rebutted by circumstances.

BILL IN CHANCERY, in the Wayne Circuit Court, to en-force a specific performance of a resulting trust, and also for a partition. The case was heard before the Hon. William Wilson, at the August term 1846, and a decree entered in conformity with the prayer of the bill.

*A. T. Bledsoe*, for the plaintiffs in error.

The Opinion of the Court was delivered by

CATON, J. This bill was filed by the children of James Taylor by a second marriage against the children which he left of a former marriage, to enforce the specific performance of a resulting trust. The bill states, that James Taylor, the ancestor of all of the parties, in the year 1820, with his own money, and for his own use and benefit, purchased a certain quarter section of land of the United States, in the names of William and Isaac Taylor, his two eldest sons, who were at that time minors, which was not intended as an advance to them, but in trust for himself. James Taylor died in 1841, without having procured the said trustees to execute the trust, for which purpose this bill is filed. The bill also states that Isaac Taylor has sold by quitclaim deed to William Merritt, who was also made a defendant. There is also a prayer for partition. The bill also sets forth a variety of circumstances, as tending to prove the right claimed, which will be noticed when the proof comes to be considered.

William Taylor admits the purchase by James Taylor as charged, but says that the money with which the land was

bought, was furnished by their grandmother or by their mother, for the express purpose of purchasing said land for him and his brother Isaac. He denies a portion of the circumstances set up in the bill, as tending to prove the trust.

Merritt admits that he purchased a portion of the land as charged, but denies all knowledge of the other matters stated in the bill.

In this case there are no principles of law which are controverted, excepting as to the amount of evidence which should be required to make out the case. We entertain no doubt, that the money with which this land was purchased belonged to James Taylor, and but for the relationship of the parties, the law would imply a trust at once. But the presumption of law is the other way, where a father purchases land in the name of his children. Where that is done, unaccompanied by any extraordinary or explanatory circumstances the supposition is, that it was intended as an advance or gift to them, and it has been regretted by some very able judges, that this presumption has ever been allowed to be rebutted, by considering the child a purchaser, for a good consideration which the natural love and affection of the father for the son, would warrant. 2 Story's Eq. Jur. § § 1202, 1203, and note 2, 2d Ed. The law, however, is too well settled to admit of doubt, and upon looking into the cases it is found, that this rebutter is often established by circumstances, not the most cogent and satisfactory, as where the father takes possession of the land and receives the rents and profits, or where the son gives receipts in the father's name, or where the son had been previously provided for. But after all, the most that can be said on this subject is, that no fixed and definite rule can be found to guide us but the intention of the father, at the time the purchase was made, which must be gathered from all the lights which the attending circumstances afford. Now, in this case, I confess that we have so much light that I have great difficulty in seeing my way clear. Indeed, it rarely occurs where the evidence is so equally balanced, when all taken together, as to leave the mind so nearly upon an equipoise.

Taylor *et al. v.* Taylor *et al.*

In support of the legal presumption in favor of the de-- fendants below, is the fact, which I think is proved, that the father obtained the money with which the land was pur- chased by his first wife, who was the mother of his two sons in whose name he entered it. But the answer to this is, first, that we ought not to suppose that he intended to bestow all that he had received by his first wife upon her two sons, leaving her two daughters entirely unprovided for. Besides, James Taylor expressed his intention to give to his four chil-- dren by his first wife, sixty dollars each, on account of what . he had received by their mother; and this he did do, either in money or property, as to all except, perhaps, one of the daughters. But it is proved by several witnesses, that the father repeatedly declared, that the land was en- tered with money received by his first wife, and that he intended it for Isaac and William; and then there are other witnesses who swear to contrary declarations during the same time, insisting that the land was his. It is also proved clearly that James Taylor took possession of the land immediately after he entered, improved it and continued to reside on it till the time of his death in 1841, a period of over twenty years, with the exception of a few years when it was in the possession of William or Isaac, which I shall advert to again, and that he cultivated and treated it as his own. But the answer to this is, that he declared that he ex- pected to live on the land as long as he lived, unless he got another place, as there was room enough for them all; from which it is inferred that he manifestly recognized it as be- longing to his two sons; and he declared while in possession, that it belonged to William and Isaac, as several witnesses state.

If the evidence had stopped here, I should be of opinion that the legal presumption would have to prevail, that at the time the father entered the land, he intended it for his sons, in whose names he purchased it. But the testimony of Isaac Taylor, one of the grantees, is certainly entitled to very great consideration, from the superior means of knowledge which

he possessed, and from the interest which he had in know-ing precisely how the matter stood, and from the fact also, that his interest at one time, at least, was identical with that of William, who is now particularly resisting this claim. He says that he knew of the purchase, and how it was made, and with what funds, and that he always understood that the land was entered in his and his brother's names, not for their benefit, but for the benefit of their father. Now, if the father really intended the land for their benefit, it can hardly be possible that Isaac would not have known it. It is true that it is not easy to reconcile this with the repeated declara-tions that the father made in his life-time to the contrary, unless we are to suppose that he had some object in holding out this idea to the world, which is not explained. This most probably may have been the case, especially when we take into consideration another circumstance, which is clear-ly proved by Isaac, which, I think, is entitled to more weight than any loose declarations which may be proved, and which is entirely inconsistent with the idea that either of the par-ties considered the land as really belonging to the sons.

Isaac Taylor testifies, that in 1823 William purchased one half of this land of his father, for which he paid him sixty dollars down, and was to pay him $250 more. This he was told by both his father and William. Under this con-tract William took possession of the land, and held till about 1830, when he sold it back to his father, who paid him back the sixty dollars, and also thirty dollars for improvements which he had made on the land. After this, Isaac bought the land of his father for the same price, and held it for one year, when he also sold it back to his father at the same rate. Isaac also says that he agreed to give a bond for a deed at any time, and he heard William say he was willing to do the same.

Now all of this is utterly inconsistent with the idea that ei-ther of the parties understood the land really to belong to the sons. They bought and sold it, as if it belonged to the father, and treated it throughout as if it were his. This circumstance can be explained upon no rational hypothesis, consistent with any other supposition, and it is calculated to

carry conviction to the mind with more certainty than loose declarations made to third persons, which may have been made with interested motives to conceal his real interest in the premises. If we are bound to reconcile all of this conflicting testimony, I see of no other way of doing it with any degree of plausibility.

On the whole, we cannot say that we are dissatisfied with the decree of the Circuit Court, and it is affirmed with costs.

*Decree affirmed.*